**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Steven G. Noffsinger,                                    Case No. 3:15CV1552

             Plaintiff,

    v.                                                          **ORDER**

Jason K. Landers, et al.,

             Defendants.


      This case arises from a "cold case" investigation that, although it led to plaintiff Steven G. Noffsinger's indictment on an aggravated murder charge with a capital specification, resulted in a not-guilty verdict.

      Defendants are: 1) Jason K. Landers, Sheriff of Paulding County, Ohio; 2) Robert Garcia, Paulding County Deputy Sheriff; and 3) Brion Hanenkratt, Paulding County Deputy Sheriff.

      Plaintiff asserts federal-law claims for malicious prosecution and civil conspiracy under 42 U.S.C. § 1983. (Doc. 4 at 11-13). He also asserts state-law claims for invasion of privacy/false light, defamation, malicious prosecution, and intentional or reckless infliction of emotional distress. (*Id.* at 10-17).

      I have jurisdiction under 28 U.S.C. §§ 1331, 1343.[1]

      Pending is defendants' motion for judgment on the pleadings. (Docs. 34, 35). For the reasons that follow, I grant the motion.

---

[1] Plaintiff argues I have jurisdiction over his state-law claims under 28 U.S.C. § 1367. As discussed below, I decline to exercise jurisdiction over those claims.

**Background**

On December 17, 1981, plaintiff's wife, Alma Noffsinger, was found dead in her home. (Doc. 4 ¶ 18). The Lucas County and Paulding County Coroners performed an autopsy and ruled the death a homicide. (*Id.*). The Paulding County Sheriff's Office (PCSO) then conducted an investigation. (*Id.* ¶ 19).

The initial law enforcement reports indicated that Alma Noffsinger's residence was undisturbed, other than the bedroom where the homicide occurred, and that there was no evidence of forced entry, burglary or sexual assault. (*Id.* ¶ 30).

Authorities interviewed several persons of interest, including plaintiff. (*Id.* ¶ 19). In the end, however, the investigation did not result in an arrest. (*Id.* ¶ 20).

In June 2014, producers of the television program "Cold Justice" traveled to Paulding and met with defendants, seeking to convince them to re-open the investigation.[2] (*Id.* ¶ 21). Defendants agreed. (*Id.* ¶ 22).

Defendants did not exhume Alma Noffsinger's body to re-examine it. (*Id.* ¶ 29). Nor did they examine evidence from the 1981 investigation, as it was all either lost or destroyed.[3] (*Id.*). Defendants instead relied on interviews with several individuals, including retired police officers who had worked on the case. (*Id.* ¶ 38).

---

[2] Plaintiff originally also named the producers as defendants. (Doc. 4 at 3-4). He has since dismissed them. (Doc. 36).

[3] A forensic chemist did, however, write a report in 1982 detailing his examination of the evidence. (*Id.* ¶ 26). The report concluded, "[n]othing was found on the samples [of evidence] which were associated with foreign materials from a possible assailant." (*Id.* ¶ 27).

2

Based on their investigation, defendants concluded that plaintiff had murdered his wife, and presented that conclusion to the county prosecutor. (*Id.* ¶ 41).[4]

In July 2014, a grand jury heard evidence against plaintiff and indicted him on one count of aggravated murder with a capital specification. (*Id.* ¶ 43). Authorities arrested him and held him without bond until his trial. (*Id.* ¶¶ 44, 48).

Landers held a press conference announcing the arrest, during which he stated, *inter alia*, "Aggravated murder with specification makes this a capital case. As far as the legal system goes, there's a whole different set of books that goes along with it when you look at potential death penalty cases." (*Id.* ¶ 45).

In May 2015, a jury found plaintiff not guilty, and a judge ordered him released. (*Id.* ¶ 48). He had spent 264 days in custody. (*Id.* ¶ 44, 48).

Plaintiff filed this lawsuit on August 25, 2015. (*Id.*). Defendants moved for judgment on the pleadings on March 15, 2016. (Docs. 34, 35).

## Standard of Review

I review motions for judgment on the pleadings under Fed. R. Civ. P. Rule 12(c) with the same standard of review as motions to dismiss under Rule 12(b)(6). *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718 (6th Cir. 2010) (citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)).

Under Rule 12(b)(6), a claim survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

---

[4] Plaintiff alleges defendants decided to present the case to the county prosecutor only after the "Cold Justice" producers told them the program would not air without an indictment. (*Id.* ¶ 42). Whether or not that is so, the program aired seven days after the indictment. (*Id.* ¶ 47).

U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

A complaint is insufficient "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557 (internal quotation omitted)).

I must construe the pleadings "in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). Plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## Discussion

Defendants ask that I dismiss both plaintiff's federal § 1983 claims and his state-law claims. I address the § 1983 claims first.

## A. Section 1983 Claims

Defendants argue they are entitled to judgment on the pleadings as to plaintiff's § 1983 claims because they have immunity.

 Section 1983 provides, in relevant part: "[e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . .  subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 "'is not itself a source

of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

A plaintiff bringing a claim under § 1983 must establish that the defendants acted under color of state law and that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or federal laws. *Haag v. Cuyahoga County*, 619 F. Supp. 262, 271 (N.D. Ohio 1985) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

No dispute exists that defendants acted under color of state law. Accordingly, plaintiff must establish 1) that no immunity applies, and 2) that defendants violated his constitutional rights.

Although it is not clear from his First Amended Complaint (Doc. 4), plaintiff asserts in his opposition to defendants' motion that he is suing defendants in both their official capacities and their individual capacities. (Doc. 37 at 9). Defendants argue that in both cases, they are entitled to immunity. I address each case in turn.

### 1. Official Capacity

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). Courts thus treat suits against municipal officials in their official capacity as suits against the municipality. *Pusey v. City of Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993). They are *not* suits "against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "[W]hile an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id.*

5

To prevail in such a suit, a plaintiff must identify a municipal entity "policy" or "custom," *id.*, with a "direct causal link to the constitutional violation." *Hurst v. Fentress Cty. Tennessee*, 2000 WL 1206520, *2 (6th Cir.). "A 'policy' is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Shorts v. Bartholomew*, 255 F. App'x 46, 57 (6th Cir. 2007) (citation omitted); *see also Brown v. Shaner*, 172 F.3d 927, 930 (6th Cir. 1999). A "custom" is so permanent, widespread, or well-settled that it has the "force of law" and needs no formal approval. *Doe v. Claiborne County*, 103 F.3d 495, 507-08 (6th Cir. 1996).

Under Ohio law, "a county sheriff's office is not a legal entity capable of being sued for purposes of § 1983." *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 347 (6th Cir. 2007); *see Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) ("[T]he Sheriff's Department is not a legal entity subject to suit."). Plaintiff does not argue otherwise. Recovery from the PCSO is therefore not possible.

To the extent plaintiff hopes to recover from the county, he offers scant evidence that there was a municipal "policy" or "custom" that caused a constitutional violation. Indeed, he admits otherwise when he argues that his arrest and indictment resulted from the "*abandonment* of Paulding County Sheriff's Office standard operating procedures." (Doc. 37 at 11) (emphasis added). Obviously, if defendants' actions deviated from the norm, they could not have resulted from a "policy" or "custom" attributable to Paulding.

Plaintiff's official-capacity claim therefore lacks merit.

### 2. Individual Capacity

Qualified immunity is not a defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526

6

(1985). Instead, the doctrine, when applicable, precludes suit entirely. *Id.* The doctrine has this effect so government officials need not undergo the burdens of discovery and trial. *Id.*

In *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009), the Sixth Circuit summarized the doctrine of qualified immunity and related principles:

> Qualified immunity shields government officials from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity ordinarily applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful. Qualified immunity gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. Qualified immunity applies irrespective of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact.
>
> Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity. Plaintiff must show both that, viewing the evidence in the light most favorable to [him], a constitutional right was violated and that the right was clearly established at the time of the violation. If plaintiff fails to show either that a constitutional right was violated or that the right was clearly established, [he] will have failed to carry [his] burden.

(Citations and internal quotation marks omitted).

In short, to decide whether a government official is entitled to qualified immunity a court must determine whether plaintiff has shown the official violated a constitutional right that was "clearly established" when he or she did so. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Plaintiff has not met his burden.

Plaintiff's states, *inter alia*, a claim for malicious prosecution under § 1983.[5] The Sixth

---

[5] As explained below, plaintiff's § 1983 civil conspiracy claim rises and falls on the viability of his malicious prosecution claim, so I address the latter claim first.

7

Circuit "recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment," which "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006) (internal quotation marks omitted).

The Sixth Circuit articulated the elements of a § 1983 malicious prosecution claim in *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010):

> To succeed on a malicious-prosecution claim under § 1983, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution.[6] Third, the plaintiff must show that, "as a consequence of a legal proceeding," the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

(Citations omitted).

Thus, no finding of malice is necessary if there was no probable cause. *See Thacker v. City of Columbus*, 328 F.3d 244, 260-61 (6th Cir. 2003) ("[I]f the lack of probable cause is demonstrated, 'the legal inference may be drawn that the proceedings were actuated by malice.'") (citation omitted)).

Under federal law, however, "the issuance of an indictment by a grand jury conclusively determines the existence of probable cause." *Barnes*, 449 F.3d at 716; *see Cook v. McPherson*, 273

---

[6] Probable cause for this purpose is "'a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious [individual] in the belief that the person accused is guilty of the offense with which he [or she] is charged.'" *Harris v. Bornhorst*, 513 F.3d 503, 520 (6th Cir. 2008). (citation omitted).

8

F. App'x 421, 423 (6th Cir. 2008) ("[T]he finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer.").

Plaintiff correctly points out that "[a]n exception to this general rule applies when defendants knowingly or recklessly present false testimony to the grand jury to obtain the indictment." *Webb v. U.S.*, 789 F.3d 647, 660 (6th Cir. 2015). He argues that in his case, probable cause did not support the capital specification. (Doc. 37 at 8). He concludes that the "grand jury was misled into believing that this was to be a capital case and issued the indictment and specification as such." (*Id.*). He claims the indictment was therefore invalid.

The capital specification read: "The Grand Jury further find and specify that the Defendant Steven G. Noffsinger committed the aggravated murder with prior calculation and design while committing the offense, pursuant to Revised Code Section 2903.01(A)." (Doc. 28 at 13). I agree with plaintiff that "prior calculation and design" is not one of the criteria for imposing a death sentence under O.R.C. § 2929.04. Rather, it is one of the elements of an aggravated murder charge under O.R.C. § 2903.01(A). Nonetheless, plaintiff's argument that the indictment was invalid is misguided.

As a threshold matter, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests *entirely* in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 264 (1978) (emphasis added).

In other words, defendants had *no* discretion to choose what charges and specifications appeared in the indictment. *See Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 316 (6th Cir. 2005) ("Under Ohio law, police officers will not be held liable for the instigation of criminal

9

proceedings, where they provide the prosecutor with 'a full and fair disclosure of all the material facts as revealed by [their] investigation, including [the accused's] exculpatory statements.' Once they have done that, in spite of their investigative activities, the officers' status in the prosecution is 'no more than that of witness or informant.'") (citations omitted). Thus, any inaccuracies in the indictment – whether intentional or accidental[7] – are not attributable to defendants. *See id.*

That fact aside, nothing in Ohio law mandates that probable cause underlie a capital specification. Plaintiff points to no cases, and I have found none, that hold otherwise. Section 2929.04 simply states that imposition of the death penalty is precluded unless the prosecution proves the specification beyond a reasonable doubt before sentencing. O.R.C. § 2929.04(A); *see* O.R.C. § 2941.14(B) (same). Of course, plaintiff's case never reached sentencing, as the jury acquitted him of the underlying charge, so this whole issue is moot.

Notwithstanding plaintiff's objections, the indictment was valid on its face. To pass constitutional muster an indictment must: 1) set forth all the elements of the charged offense and give notice to the defendant of the charges against him; and 2) sufficiently specify the offense so as to enable the defendant to raise a double jeopardy defense in a subsequent proceeding, if charged with the same crime based on the same facts. *Russell v. United States*, 369 U.S. 749, 763-64 (1962); *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992). The test is not whether the prosecutor could have framed the indictment in a more satisfactory manner, but instead whether it conforms to minimal constitutional standards. *United States v. Koehler*, 77 F. App'x 306, 307 (6th Cir. 2003).

---

[7] "The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chem. Foundation*, 272 U.S. 1, 6 (1926). No such evidence exists here.

The indictment at issue here unquestionably passes muster – the aggravated murder charge accurately reflected the requirements of § 2903.01(A) and put plaintiff on notice of the charge against him. (Doc. 28 at 13).

Indeed, plaintiff does not dispute that fact. Instead, he speculates that defendants' involvement, participation, and influence in the grand jury proceedings may have caused "irregularities and/or improprieties" that invalidated the indictment. (Doc. 37 at 7-9). He therefore argues that he "should be given an opportunity to proceed to the discovery phase to attempt to obtain grand jury transcripts in Plaintiff's underlying criminal case to further satisfy the burden of meeting the exception to the probable cause determination." (Doc. 37 at 9). I disagree.

The grand jury system depends on secrecy. *See Douglas Oil Co. v. Petrol Stops Northwest*, 411 U.S. 211, 218-19 (9179). That said, "[g]rand jury secrecy . . . is not absolute." *Horizon of Hope Ministry v. Clark Cty., Ohio*, 115 F.R.D. 1, 3 (S.D. Ohio 1986). I can order disclosure of grand jury transcripts if "justice can only be done if disclosure is made."[8] *Petition for Disclosure of Evidence Presented to Franklin Cty. Grand Juries in 1970*, 63 Ohio St. 2d 212, 218 (1980); *see Miller v. Meyer*, 2015 WL 770333, *3 (S.D. Ohio) ("[G]rand jury transcripts are discoverable in civil rights actions against counties and their employees when review of the transcripts could show that the grand jury proceedings were aimed at depriving plaintiffs of their civil rights rather than legitimate investigations of criminal acts.").

---

[8] I agree with other Ohio federal courts that, in the interest of comity toward the state criminal justice system, a federal court should submit requests for grand jury materials to the court that supervised the grand jury in the first place. *See Mason v. Wal-Mart Corp.*, 2015 WL 409695, *3 (E.D. Ohio); *Brunson v. City of Dayton*, 163 F. Supp. 2d 919, 922 (S.D. Ohio 2001). But plaintiff has not asked that I do so here.

11

The party seeking disclosure must, however, demonstrate a "particularized need" for the transcripts that outweighs the need to maintain the secrecy of grand jury proceedings. *Petition for Disclosure*, 63 Ohio St. 2d at 218. "[M]ere speculation or suggestion . . . is not sufficient to show a particularized need for disclosure." *Miller*, 2015 WL 770333, at *3.

In this case, although plaintiff's First Amended Complaint alludes to the possibility that defendants improperly influenced the grand jury proceedings, it alleges little in the way of factual support. Plaintiff bases his request for disclosure on conjecture,[9] not particularized facts that support a need for the transcripts. "[I]t would be a dangerous precedent to allow a fishing expedition through grand jury proceedings in search of irregularities." *United States v. Glove Chem. Co.*, 311 F. Supp. 535, 539 (S.D. Ohio 1969). Accordingly, I deny plaintiff's request for disclosure of the grand jury materials.

In sum, plaintiff cannot show a lack of probable cause for the investigation that led to his arrest and indictment. *See Barnes*, 449 F.3d at 716; *Cook*, 273 F. App'x at 423.  Unable to do so, he also cannot show that defendants violated his constitutional rights. *See Sykes*, 625 F.3d at 308. Defendants are therefore entitled to qualified immunity from plaintiff's § 1983 malicious prosecution claim. *See Saucier*, 533 U.S. at 201.

Defendants likewise have qualified immunity from plaintiff's § 1983 civil conspiracy claim. "In order to state a cause of action for conspiracy, a plaintiff must demonstrate the existence of an underlying tort." *Dauenhauer v. Bank of New York Mellon*, 562 F. App'x 473, 483 (6th Cir. 2014).

---

[9] In his opposition to defendants' motion, plaintiff theorizes "[i]f any of the television production interviews with witnesses were presented to the grand jury there would be . . . irregularity and/or impropriety at the hands of the Defendants." (Doc. 37 at 8).

12

Plaintiff has not done so here – the failure of his malicious prosecution claim is fatal to his civil conspiracy claim. Thus, plaintiff has shown no constitutional violation. *See Sykes*, 625 F.3d at 308.

In light of the above, I grant defendants' motion as to both of plaintiff's § 1983 claims.

### B. State-Law Claims

Defendants also urge me to decline to exercise jurisdiction over plaintiff's state law claims.

Under 28 U.S.C. § 1367(c):

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –
>
> > 1) the claim raises a novel or complex issue of State law,
> >
> > 2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> >
> > 3) the district court has dismissed all claims over which it has original jurisdiction, or
> >
> > 4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

As explained above, I have dismissed the only claims over which I have original jurisdiction. The statute therefore permits me discretion not to exercise supplemental jurisdiction over the remaining state-law claims. *Id.*; *see Franklin v. Lucas Cty. Children Servs. Bd.*, 2006 WL 561872, *2  (N.D. Ohio) (Carr, J.).

To decide whether to exercise its discretion, a court should weigh the issues of "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). A court's discretion "is bounded by constitutional and prudential limits on the use of federal judicial power." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996).

13

According to the Sixth Circuit, "[a]s a rule of thumb . . . . [w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Id.* at 1254-55 (citing *Carnegie-Mellon*, 484 U.S. at 350 n.7).

Following *Musson*'s reasoning, the state and federal interests present in this case favor my not exercising jurisdiction over the remaining state-law claims. There are no significant issues of judicial economy because the case is not so far advanced that litigation in state court would result in a duplication or waste of judicial resources. *See, e.g.*, *Eatherton v. New York Life Ins. Co.*, 2003 WL 21478979, *1 (N.D. Ohio) (Carr, J.).

Considerations of comity also favor dismissal of the state-law claims. "Comity" means having the proper respect for the respective functions and interests of the federal and state judicial systems. *Id.* (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10 (1987)). The only claims remaining require interpretation of Ohio laws, which Ohio state courts are best suited to address. *See, e.g.*, *id.*

Finally, plaintiff has not alleged that having to pursue his state-law claims in Ohio state court would unfairly prejudice or inconvenience him.

Accordingly, I decline to exercise jurisdiction over the remaining state-law claims.

## Conclusion

It is, therefore,

ORDERED THAT

1. Plaintiff's claims under 42 U.S.C. § 1983 (Second and Third Causes of Action) be, and the same hereby are, dismissed with prejudice; and

14

2.      Plaintiff's state-law claims (First, Fourth, Fifth and Sixth Causes of Action) be, and

the same hereby are, dismissed without prejudice.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

15